The first reason the district court gave for denying Mr. Hargrove's motion was it found that extraordinary and compelling circumstances were not present and the second alternative grounds was that the 3553 factors did not justify a reduction. I'll take the extraordinary and compelling circumstances aspect of this first. The district court basically everybody I think agrees on the framework. This is a COVID case. Mr. Hargrove was sentenced to a total of 108 months. Back in 2017, the pandemic hits. He had three medical conditions that were documented that we argued would have increased his risk of severe complications if he were to contract COVID. So it was obstructive sleep apnea, asthma, and a high blood pressure. So everybody agreed that the framework here is to avoid Mr. Hargrove dying, essentially, and that is the probability that he would catch COVID and then the probability if he caught COVID that he would suffer a severe complication, either severe illness or death. But within that framework, the district court's order really restricted itself only to the CDC's highest level risk categories. And the conditions that Mr. Hargrove suffers from did not fall within the highest risk or sorry, the level of risk that has the most certainty for people that are at risk. Instead, it fell in the second tier, which is categories where the CDC didn't have sufficient information to conclusively say that there's a higher risk, but it indicated there might be a higher risk because of the data. Regarding obstructive sleep apnea, we submitted two preliminary studies that indicated there is a correlation and there may be an increased risk. And the district court's answer to that was simply not to consider it because it was not in this highest tier CDC category. That is, in our argument, an abuse of discretion. Discretionary decisions require an evaluation of the entire picture and the whole circumstances. It is not compatible with bright line rules. And a district court simply saying, if it's not in the highest CDC category, then it can't factor in, is an abuse of discretion. It's as if a district court were to say, well, you know, this case involves, at a sentencing, this case involves heroin and I never give less than five years in a heroin case, right? Then it wouldn't matter how much mitigation is on the other side. You can never outweigh that bright line rule and that fast and hard rule. And the district court's order, especially pages 129 and 130 are really where the reasoning occur. But its order reflects that it would not even consider these conditions as increasing his susceptibility to severe complications from COVID. I should note at this point, I think there are, in a lot of cases, the government had been, especially last year in the middle of the pandemic, and I think more recently, but the government had been conceding in district court that asthma and certain of these even second tier CDC category conditions constituted extreme and unusual circumstances. And then simply arguing about the 35 grade factors. In this case, the government did not concede that extreme and unusual circumstances were present in the district court, but its reasoning was reversed. It said that there wasn't a risk that he would catch COVID in the first place. Now the district court, in fact, found that Mr. Hargrove was at risk of catching COVID. He was at, when I initially filed the motion, he was at FMC Deben's in Massachusetts, a federal medical center. While the motion was pending, he was transferred to Yazoo City, Mississippi into the middle of an outbreak run. And we submitted those documents. So the district court found, yes, he's at risk of getting COVID. So really the only analysis left to do under the agreed framework was how likely is it that he's going to suffer severe complications when he does get it. I should note, since the appeal has been pending, he's now again been transferred. He's now at FCI Hurlong out in California for whatever reason. So he's been, his family's all here in Richmond. He's been at Massachusetts and then Mississippi, and now he's out in California. So your argument here is that, not that the fact that they might versus, not the fact that you couldn't consider that these aren't the highest risk. As I understand it, you wouldn't deny that could be part of the analysis, but to the extent there's a bright line requiring the highest level of risk, that would be legal error. Yes. We are, I think it would go in the phrase that the district court's like, it would be the weight of the evidence or the degree of how extreme is this exactly. But it would not, and to be clear, this is a procedural error we're arguing. We're not arguing that this automatically and must qualify on these facts as extreme and unusual circumstances. It's just that the district court has to consider and factor in the fact that he has sleep apnea, the fact that although the science is not well developed, there are studies out there showing a risk. And then the combination of these three conditions might, any one of them might contribute to the risk of a severe illness. I'd like to move on to the second error that unless there are any questions regarding the extreme and compelling circumstances. The second error is the 3553A factor analysis. The first argument is that the district court failed to adequately address the arguments regarding Mr. Hargrove's post-sentencing rehabilitation. And I understand the government filed a 28J motion citing cases that were decided after the initial briefing, Kibble and High. The district court, in its order, holding the 3553A factors, counseled against the reduction, gave one sentence to the evidence we submitted. It says, although the court congratulates or commends Mr. Hargrove for his self-improvement, I think, but the actual evidence we submitted was his wife scheduled for surgery, actually filed in a supplement. The fact that he did, his wife, they were in a relationship at the time he was initially sentenced, but they actually got married. She went up to FNC Devens and they were married while he was in custody. His stepson, her child that he had been living with and helping raise, died when we submitted the obituary. He completed not simply a few programs. He completed every program that he had access to, including, and most importantly, the non-residential drug and alcohol treatment program. And his disciplinary record, which we also submitted, was completely clean, not a single even minor violation. These were all supported by documents from the Bureau of Prisons, medical records from his wife, and the district court simply did no weighing of those against the admitted seriousness of the offense and the gravity of the situation for which he was originally sentenced. The case law on this, we're arguing this falls much more closely under Martin and McDonald, which are also 3582 situations where the defendant presented a substantial amount of post-sentencing rehabilitation, which just got no motion or no weighing from the district court. The district court acknowledged it, said, I considered it, and then denied the motions without sort of explaining or saying whether and how this evidence moves the ball. In this case, the district court's order simply said, the factors of under 3583 that led the court to impose that sentence remain. Well, that's going to be true in every single compassionate release case. We're not questioning the original analysis. The question is, has anything changed? And if you look back, we included actually the original sentencing transcript in the joint appendix. This was a difficult case because Mr. Cargo, the district court characterized him as, it's a Dr. Jekyll and Mr. Hyde situation. Because on the one hand, while he was on supervised release, he was working, he got a good job, he was working 12 hour shifts. He managed to move his family out of Gilpin Court and out of the housing projects and out into the county and get them a house. He was supporting not only his partner, Natasha, but all of their children. I mean, he was on that side doing really well. But on the other side, one of his old confederates from down in Gilpin Court called him up and unknown to him, obviously was working as a CI, but asked him to get some heroin for him, which he did, obviously. But the simple fact is, this was already a case where there were strong, both strong aggregators and strong mitigators. And so this is something that weighed more heavily on the mitigation side after the sentencing in circumstances that had changed. But counsel, if I could add, if I could follow up on something you said that 3553A factors remain, and that applies in every case, doesn't High and Kimball, when considered in conjunction with Martin, suggest that the length of time of incarceration matters? And, you know, for example, in Martin, I think, you know, the defendant had been in prison for a couple of decades. So when those factors, yeah, they remain, but when they're recent, it makes a difference. That's fair, Your Honor, to say. I think Mr. Hargrove got to the BOP, I believe, in early 2018. A couple of years. Right. So he'd been in four years as of day one. That is true, Your Honor. So if it's a very brief time and they don't have time, there's only a couple certificates, that would be one thing. But I think it's not just the time, it's also the level of effort that's put into it. And even in the brief time he was there, he did so many programs, a lot of them health-focused. Clearly, he's attentive to his health. And a lot of them focused on combating the drug addiction that the court had heard about. Basically, he had a foot injury, he'd been prescribed opioids, and then he was using about six pills a day around the time of his arrest. And so completing the non-residential drug and alcohol treatment program, which is the second most rigorous program, the most being the residential drug and alcohol treatment program, especially in the short amount of time that he was in prison, was a significant accomplishment. In addition, of course, you know, during COVID, a lot of the programming was suspended simply because he couldn't congregate together for those classes. So yes, I agree, the amount of time is relevant, but a lot of work in a short amount of time can still, I think, weigh on that factor. And it at least deserves some kind of analysis in the order from the district court. Some kind of mention about acknowledging not only that, you know, he's taken these efforts, but why it does not move the 35-3A factors, why it doesn't shift the balance even a little bit on the scale of mitigation. The last issue, Your Honor, is the use of just punishment and promoting respect for the law as their consideration in denying the reduction just as to the supervised release violation. And after rereading all the briefs in this, I do realize in the district court, I did not explicitly cabin the analyses between the new sentence and the supervised release case. It was, in fact, though, the subject of an appeal, a prior appeal, and it was explicitly on the record of the original sentence. So considering, as I think the court should, the record as a whole, the issue had been raised, our position had been made quite clear to the district court. 3583 lists, and this is for supervised release, the initial imposition of supervised release and for the sentence on any revocation of supervised release, does not reference all of the 35-50-3A factors. It omits the retributive factors, just punishment, promoting respect for the law, and the need for the sentence to reflect the seriousness of the protecting the public and deterrence. But when the district court denied this motion under 35-50-3A on the alternative grounds, it explicitly stated that the sentence that originally imposed sufficiently accounted for deterrence, the need to promote respect for the law, and the need to reflect just punishment for the offense. The argument here is 3582, under which this motion was brought, says that the district court has to consider the 35-50-3A factors to the extent that they are applicable. And in reducing a supervised release sentence, those 35-50-3A factors are not applicable. They shouldn't have been applicable at the original sentencing, and they are not applicable in deciding whether to reduce the sentence. In other words, they can't be invoked to sustain the sentence, where they were never the basis for imposing it in the first place. Tapia, this court in Crudup said the district court did not authorize to consider those factors. The Supreme Court, even in Tapia, was quite explicit that the omission of those factors means that they cannot be considered. I see my time is up, so I'll proceed to the government counsel. Thank you, Mr. Camden. Ms. Bechara? Good morning, and may it please the court. Jacqueline Bechara for the United States. Can you hear me all right? Yes. There are two independent and sufficient reasons why the district court did not abuse its discretion in denying the defendant's motion for compassionate release. First, the district court properly relied on guidance issued by the CDC to find that the defendant had not established an extraordinary and compelling reason based on a particular susceptibility to COVID-19. Second, the district court did not abuse its discretion in relying on the 3553A factors. You're going to keep your voice up, right? We're across the room. Yes, Your Honor. Thank you. In relying on the 3553A factors to find that a sentence reduction would not be appropriate just two and a half years after it had imposed its sentences in this case. This court can affirm based on either or both of those findings. Turning first to the extraordinary and compelling analysis, this court made clear in McCoy that 3582C1A sets an exceptionally high standard for relief. Now, in navigating the novel legal issues presented by the COVID-19 pandemic, courts across the country have relied on the CDC's guidance to assess whether a defendant's medical conditions make him particularly susceptible to experience a severe illness from COVID-19. And indeed, at least four circuits in published opinions have upheld district court decisions relying on the CDC's guidance to assess particular susceptibility. For that reason, the district court did not abuse its discretion in relying on the CDC's guidance here. If the court has no questions as to the extraordinary... I do have a question, Ms. Schauer. Well, relying certainly is a factor. Obviously, it's a very important thing that our nation relies on to some degree in the CDC. So, certainly can't criticize the court for doing that. But the question is, relying on it in the sense of the strata that they found none of them equal to the highest level, but recognizing all of them, though, were likely to be indicated as susceptibility to more complicated or severe symptoms or implications of contracting COVID, right? None of them made the top tier. Do you agree with counsel's assessment that Mr. Campbell's assessment or not? Your Honor, I would dispute the defendant's characterization that the district court applied some kind of bright line or categorical rule. I think we should look at the district court's ruling in context. And in particular, I would point the court to two things. At JA 130, note six, the district court said the defendant had not actually established that his asthma was moderate to severe as contemplated by the CDC's guidance, but the court would assume for purposes of this motion that it was at least moderate. And then at JA 131, note seven, the district court went on to say that even a condition on the CDC's list of conditions that definitely increase risk may not amount to an extraordinary and compelling reason if it is not sufficiently extreme. So that taken in conjunction with the district court's overall assessment of his medical factors indicates that what the district court was really trying to do was to assess the extremity, the severity of his medical conditions. It's not just the existence of a medical condition that makes someone particularly susceptible. It's how that condition presents itself, how the defendant experiences it on the day-to-day, whether it is interfering with normal activities. And the way that it manifests is what would interfere negatively with COVID-19. And that's what we should rely on the district court to assess as a fact finder in the first instance. And what did the fact finder, the court, find about his symptoms or his daily activities that would say that he was not? I apologize for- No, go ahead. What was it? Your Honor, the defendant simply did not introduce any evidence that he was suffering adverse symptoms from any of these conditions, right? It is true that BOP, his medical records indicate that he was diagnosed with asthma. Now it says unspecified. So we don't know what that means. We don't know the severity. There's no indication of the frequency of asthma attacks or waking up with difficulty breathing or anything like that. He was also diagnosed with sleep apnea. What we know is that BOP provided him with a CPAP machine and the records indicate that it works well for him. All he needed were new filters, right? And then he was not in fact diagnosed with hypertension. That is his position. He believes that his blood pressure is high, but there's no hypertension diagnosis and there's no indication that his blood pressure is somehow causing him to experience some kind of illness or suffering that would interact negatively if he were to contract COVID-19. But we do know that COVID attacks the lungs, right? Yes, Your Honor, but the defendant, the words particular susceptibility have to mean something in this context, right? It can't just be hypertension in the abstract. It is the defendant's experience of hypertension and whether that in fact makes him more likely to have an adverse reaction, interaction with COVID-19. Well, hypertension is elevated in part by inflammation in fluids, right? Your Honor, I can't presume to be a medical expert at all, but I will remind the court that he was not diagnosed with hypertension. What did you say? He has never been diagnosed with hypertension. I thought you said he did have hypertension. No, that's his position. There is no diagnosis in his medical record of hypertension. That's just peeling out the allegation with nothing in the record about being treated for any of those medications for high blood pressure. He's not. No, Your Honor. I mean, you can see that BOP is treating his other conditions. For example, the record indicates that he has a vitamin C deficiency, and so they have prescribed medication for him on that front. But if he were diagnosed with hypertension, and I can say I've seen this in other defendants' medical records, BOP frequently prescribes something to alleviate the symptoms of hypertension, but we don't have that here because he was not diagnosed as such. Okay. I'll turn now to the 3553A factors. My friend's first contention was about the district court's failure to fully discuss the defendants' rehabilitation evidence. Now, as he acknowledged, since the parties completed their briefing in this case, this court held in high the Chavez-Mesa controls, and so there is no categorical explanation requirement in the context of compassionate release decisions. Instead, depending on the facts of a particular case, it is enough that the district court set forward enough to allow for meaningful appellate review, and I want to flag four features that this case shares with high that illustrate why the district court's explanation was sufficient here. So first, like in high, this was a relatively straightforward motion based on COVID-19. Second, the court was aware of the defendants' arguments. Indeed, it appointed counsel to represent the defendant, and it had this motion fully briefed before it ruled. Third, the district court sufficiently considered the sentencing factors, and I say that because we need to look at what this court upheld in high. In high, similarly, the defendant came forward with some evidence of his post-sentencing rehabilitation. Now, the district court in that case didn't actually expressly address his rehabilitation evidence. Instead, all that the district court said in high was that it had very recently sentenced the defendant, that at the time of the underlying offense, he had just been released from state custody for a violent crime, and that at the time, the 3553A factors simply did not support a sentence reduction. But here, we have even more than that. The district court thoroughly considered the sentencing factors, including the nature and circumstances of the offense, the defendant's individual history, the need to provide just punishment and promote respect for the law, and to provide adequate deterrence. Then, the district court here went even further than the district court in high, and it expressly commended the defendant on his efforts at self-improvement during incarceration. However, it ultimately concluded that the 3553A factors simply did not support a sentence reduction. Fourth and finally, we can see that the district court had an intuitive reason for denying the sentence reduction here. Like in high and in LaGree, it was the same district court judge who presided at sentencing and who ruled on the motion for compassionate release. And at sentencing, the district court selected sentences at the top end of the guidelines ranges for both the distribution offense and the supervised release violation. Moreover, the court chose to and to deny the defendant's request for downward variances with respect to both sentences. Therefore, in the words of this court in high, it is not surprising that only two and a half years later, the district court determined that a sentence reduction simply would not be appropriate. Finally, I'll touch on my colleagues' arguments as to the district court's decision denying their request to reduce the revocation sentence. In Webb, which was in the context of original imposition of a supervised release revocation sentence, this court held that it is not procedural error for the court to consider the 3553A2A factors so long as they are relevant to and considered in conjunction with the factors that 3583E expressly authorizes the district court to consider. And this court explained that that is the case because those 3553A2A factors are intertwined with the factors that 3583E instructs the district court to consider. So what the district court did here was perfectly consistent with high. Yes, it did talk about the need to promote respect for the law and to provide just punishment. What about what the statute says in terms of all of those considerations? It says only those to the extent that are applicable. Yes, Your Honor. And the court mentioned ones that are not applicable, correct? So, Your Honor. Am I correct about that? I would like to tell you what the government believes to the extent they are applicable. Let's get the record first. I'm sorry. The judge did mention factors that are not applicable by the words of the statute. Your Honor, we maintain that in the context of a compassionate release decision under 3582C1A, the district court can consider all of the 3553A factors to the extent they are factually applicable. We do not understand those words to superimpose some kind of additional legal criterion or just cross-reference 3583E. They must mean something when Congress write those statutes that says to the extent applicable. Absolutely, Your Honor. I agree with you on that point, and I think there are two indications as to what Congress was trying to do here. First, 3582C1A, that language, consider the 3553A factors to the extent they are applicable. Congress used that identical phrasing in 3582A, which governs the factors that a court should The Supreme Court has told us, generally, when Congress uses the same words in different provisions of the same section, there's a presumption that they mean the same thing. That suggests that it would be very strange, and there's no evidence here. I have located no authority to suggest that 3582C1A means something different than 3582A. The second point, Your Honor, in terms of what Congress was trying to do here, we can see in 3583E that Congress knew how to limit which factors a district court considers at certain stages of a sentencing proceeding, right? It expressly limited the factors in that provision with respect to supervised release sentences, but it didn't do the same thing in 3582C1A. That's powerful evidence that Congress did not have in mind the interpretation that my friend on the other side offers. What does it exclude then? Because based on your argument, it doesn't exclude anything. Your Honor, we would maintain that it excludes factors that aren't relevant. For example, the need to provide vocational training may not be relevant in a particular case, but that's in the district court's discretion, and that's typical of any sentencing. It looks at which factors might be relevant depending on, you know, offense conduct and the defendant's characteristics and so forth. It didn't say relevant, right? The ones that apply. Right, to the extent they're applicable. So that's your position, that the interpretation of what Congress meant was there's no restriction. It's just whether or not the district court finds, I think this is relevant, I'll do it. So that's your argument? Yes. That statute poses no restriction in terms of factors to be considered for parole violation sentencing, correct? That's your position? It replaces no restriction other than the fact that the district court decides what is relevant, what is not. So we're focusing on 3582C1A. Okay, yes. So our position, yes, it's that it is not an additional legal requirement. It is just a factual limitation. So what if, and I understand, what if we disagree with that? What if we think extent applicable refers back to the listed provisions and the ones that contain respect for the law and just are not part of, what if it's a legal restriction and not a factual restriction? What's your position if that's how we were to rule? Your Honor, if you were to determine that there is some kind of cross-reference to 3583E here, we would maintain that consistent with this court's decision in Webb, the district court still does not abuse its discretion or plainly err depending on whether this court finds that the issue was preserved because it did talk about certain 3583A2A factors, but it talked about them in conjunction with and as relevant to other permissible factors like the nature and circumstances of the offense, the defendant's individual history, and the need to provide adequate deterrence. So under Webb, that there simply was not procedural error even if this court thinks that 3583E applies to the 3582C1A decision. Does it matter that the district court's order is looking at the compassionate relief motion with respect to not just the revocation sentence, but also the independent heroin sentence? In other words, you have not just a violation of the supervised release and the sentence associated with that, you have the independent crime of distribution. Is that relevant to our consideration? That might return us to our invited error argument because that is how the defendant briefed it, right? He filed the same motion with respect to both sentences and part of his argument was that granting the sentence reduction here would not amount to a significant variance because the court could just treat it as if it was running the sentences consecutively. So in a way, the defendant was inviting the district court to analyze them together. If the court has no further questions, we ask that you affirm. Thank you, Ms. Bashar. Mr. Camden? Your Honor, picking up where my colleague left off, I totally will take the blame for if there is any confusion in the record and I will obviously in the future, I'm going to keep these types of proceedings separate. But the original case and the transcript we included make very clear we made very separate arguments on the supervised release sentence we talked about and I explicitly argued that those factors are not to be considered in a supervised release case. But the really important thing here to keep in mind is he got 46 months on a range of 37 to 46 for the new distribution of a little less than three ounces of heroin. And then he got 57 months, so a higher sentence on the revocation of supervised release from the original case. So this is the tail that's wagging the dog in this case. This is the bulk of his sentence here. Second, I need to, I think, read a quote. There's Tapia, and I came across this. This came up in another case. Sure, it's a tail wagging the dog. I thought the judge, this is the second time he violated supervised release or maybe I don't know how many times it was. And the judge recognized that he just kept committing the crimes that he was originally sentenced and gave him substantial sentences deliberately and made them consecutive on the supervised release as well as the original violation. And so that obviously the sentence on the original violation is subject to all the 3553A factors. And the court could clearly address those, couldn't it? I think it is important to make sure that the just punishment, the retributive factors don't infect the supervised release revocation sentence. So I'm reading directly from Tapia versus United the introductory sentence of 3583, so A, which lists some factors but not all. It says, for example, a court may not take account of retribution, the first purpose listed in 3583A2, when imposing a term of supervised release, see 3583C. So interpreting that exact phrase in 3583, the Supreme Court has held that a court may not take account of those omitted factors. And then this court in Crudup in 2006 said again explicitly that a district court is, quote, not authorized to consider those factors. So then you get to Webb a little bit later, and Webb cites all the cases that disagreed with Crudup and says, actually, when the district court mentions just punishment, that's not enough to render the sentence plainly unreasonable. But I think in order to be consistent with Tapia and Crudup, Webb has to be read really as a but it's clear that that's not driving the boat here. The seriousness of the offense is not driving the boat. Then it's sort of, it didn't affect the sentence length, and it's not plainly unreasonable under that super deferential standard. But when a district court lists three factors and two of them are forbidden as a reason to sustain the sentence, I think it's pretty clear that the district court is considering the seriousness of the revocation conduct and the seriousness of, or the need to promote respect for the law. It's the lack of respect for the law that the district court is punishing with this revocation sentence, which is a forbidden factor. Just briefly before I run out of time. A factor at this stage, it seems to me, it's important to keep in mind the function that the court is performing. And when the court performs a revocation sentence and imposes a revocation, it's actually called a sanction in some places, like in the guidelines for revocation violation. It's not addressing the original conduct, and it's not based on certain factors relevant to the original sentence. It has to be focusing on the revocation conduct. And that's an attempt to regulate that. But now the court imposes a sentence of X months for the revocation sentence. And when that comes subject to review for reduction, it seems to me the court can still ask whether that was just and not with respect to the original offense, but with respect to the revocation sentence. And the court reviewing its revocation sentence later would seem to allow some latitude in reconsidering or looking at its revocation sentence. Well, so 3583, which governs revocations, and also modification. That's the imposition of a revocation sentence. I'm trying to bring to your attention my question about the imposition of a revocation sentence clearly by the very nature of the proceeding, has considerations that are different than the initial imposition of a sentence for the underlying crime. But now we're in a process where we're reviewing a revocation sentence to reduce it. And the question is now, what can the court consider under 3553A in reducing that sentence? And I would think the criteria at that point as applicable are going to be different than the criteria when it imposed the sentence. I would have to disagree. I think that gives no work to the phrase, to the extent they are applicable in 3583. Well, we're debating what's happening. I mean, it seems to me the court says my 57-month sentence or whatever it was here for the revocation was an appropriate sentence in view of the revocation conduct. And it can say that. And they can say, I deliberately did that. And it's because the revocation conduct was so serious. It can review that just as it would do the same thing with respect to the underlying sentence. But it's not imposing the sentence. In other words, imposing the sentence, you have to focus on what are you imposing it for? And on the revocation sentencing, you're focusing on just post-sentence conduct, the supervised release violation. And so but on this proceeding, we're now looking at to reduce that sentence, the revocation sentence. And so now the question is, what can the court consider as a matter of discretion? And I would think the weight of the revocation sentence, vis-a-vis the conduct for which it was imposed, could be reconsidered to decide whether to reduce it. That's as relevant or as whatever word you want to use, you know, as the statute says. And I think Judge Gregory raised the, I think, important question of, is this legal or factual in the government's position? It's basically factual as applicable. I see my time. Yeah, okay. If you have an answer, it's fine. But I'm just trying to uncover what may be some justifications for differing approaches at differing times during this whole process. This case is made complex because it combines an original sentence with a revocation sentence and a review of both. Factually, I think there's no problem with the district court considering the conduct that led to the revocation. That's part of the history and characteristics of the defendant, and obviously. But the question is, what goals are appropriate? So 35-3a is factored to set out the universe of facts that can be considered, the history and characteristics of the defendant, who they are, and then the nature and circumstance of the offense, what they did. And then separately, it sets out goals of the sentence, what it's supposed to accomplish with imposing it. And that's where it's more limited. So the factual matters are always going to be relevant in every case. There's nothing a district court can be prevented from considering as a matter of fact. It's what is the purpose that's going to be imposed that is more limited in a revocation context under 35-3a. So I say thank you, Your Honor, for the opportunity. Thank you, Mr. Camden, also Ms. Schauer, for the arguments. We can't come down and greet you, but know that we appreciate you being here and wish you well and stay safe. And we'll ask the clerk to recess the court until this afternoon.
judges: Roger L. Gregory, Paul V. Niemeyer, A. Marvin Quattlebaum Jr.